EDITH HANKINSON

*v.*

SAMUEL E. HANKINSON.

The separation of a husband and wife, acquiesced in by the wife, and which she did much to bring about, however long continued, does not constitute desertion to authorize a divorce on her petition. Such a separation, however, would become desertion from the time the complaining party makes sincere overtures to terminate it.

Petition for divorce. On pleadings and proofs.

*Mr. I. R. Wilson,* for petitioner.

*Mr. E. W. Evans,* for defendant.

THE CHANCELLOR.

The petitioner prays a divorce from her husband, on the ground of desertion. By the petition she alleges that he deserted her in October, 1874. He, though he does not, by his answer, expressly deny the charge, does so substantially, setting forth the circumstances of the separation, which he attributes wholly to his wife, and alleging that as long ago as 1873 she determined that she would not live with him, and has adhered to such determination. He avers that he has been willing at all times since then to support her and his children, as far as his wages would go, and that he has clothed one of the children, but that his wife has resolved not to live with him. The parties were married in 1866, and they have ever since resided in Trenton. Their separation began in October, 1873, up to which time they had lived together as husband and wife. In that

month the petitioner's mother died, and very soon after the funeral the petitioner left her husband to go to Maryland, on a visit to her sister, who lived there. She appears to have been absent (returning in the meantime to Trenton for a day) for several weeks. During her absence, the defendant lived at his father's house, which was near the house in which the parties resided when the separation began. The petitioner returned to the latter house (which belonged to her mother's estate), when she came from Maryland, and ever since then the separation has continued. The relations between them prior to her mother's death were not pleasant. Her mother lived in their family, and for six months before her mother's death the petitioner refused to speak to her husband. The reason seems to have been his refusal to speak to her mother, between whom and him there were unpleasant feelings, arising out of his objection to the frequent visits and continued stay of her sister and her child to the house. On the day her mother died, he offered his wife his condolence, and proffered his services in regard to the funeral arrangements, but she declined them, saying that he had done nothing for her mother when she was living, and that she did not want him to do anything for her then. For six months before that time he had taken all his meals at his father's house, and his mother did most of the mending of his clothing. According to all the testimony, he never treated his wife unkindly. He testifies that on the morning after the funeral (he thinks it was the 8th of October, 1873), his wife came into his room when he was dressing to go to his work (he is a carpenter), and asked him if he thought as much of the children as she did; to which he replied that he did not know how much she thought of them, but he thought a good deal of them; that she then said that she had a proposition to make to him, and it was this: that if he would give her six dollars a week, as he had theretofore, he could come to the house and sleep, as he had been doing, but should take his meals at his father's; for as to living with him as his wife, she had promised her mother that after the latter was dead and buried she would never do it. He says she added that she asked no odds of him, that she had plenty of money to

keep herself, and if he would not do as she proposed, he should not be there with the children. He further says that she then told him that she was going away from Trenton, and did not know how long she would be gone—that she was going home with her sister. Two or three days after that she left for Maryland, and was gone, he says, until sometime in the latter part of the following month. He asked her if she would not write to him while she was away, and let him know how the children were, and she said she would not. She denies that she told him what he swears she did in the conversation above stated, said to have taken place on the 8th of October. There is some corroboration, however, of his testimony in that of the witness Albertson. She is not corroborated in any way; and I see no reason for refusing to the defendant's testimony, if uncorroborated, at least as much confidence as to hers, equally unsupported. He says that when she went away, he did not know that she was going to leave on that day, and that she caused his trunk, containing his underclothing, to be set out on the back piazza of the house in which they lived, and such of his outside clothing as he kept in his room, to be placed on top of it, wrapped in paper, and locked up the house and went away in his absence. She and some of her witnesses say that he himself caused the trunk and underclothing to be placed there, in view of her intended departure. She did not write to him while she was absent, nor did she send him any message. She returned for a day (to get some money to pay her board in Maryland, she says), but did not go to see him, nor inform him, or attempt to inform him, in any way, of her presence in Trenton. When she returned to Trenton to stay, she sent him word, she says, that she and the children had returned. He denies that he received any notification whatever. From that time to this they have lived near each other—she in the house in which they had previously lived, and he at his father's, near by. Their two children have lived with her. They have visited him, and he has bought clothes for the boy, but never has been requested to do anything for the girl. He and his wife have never spoken to each other but once in all that time. She has never asked for any money, or any assistance of any kind, from

Hankinson *v.* Hankinson.

him, but has lived on her income received from her property and her profits in keeping boarders. She has said (but not to him), within a few months before this suit was brought, that she was willing to live with him if he would return to her, and there is evidence that he has said, within the same time, that he would not live with her again. It is also proved that he has also said he was willing to assist her in any way, if she wanted his assistance. She says that the reason why he would not live with her was because of her unwillingness to give him control of her property; but there is no evidence of it.

A full and careful consideration of the evidence leads me to the conclusion that the separation between these parties was not sought by the defendant, and that it has not been without the consent or against the will of the petitioner. She has never even intimated to his father or mother, with both of whom she has been on friendly terms, any desire that he should live with her. His mother says that the petitioner has never mentioned his name to her since the separation. She has never spoken to, or communicated with, her husband but once since the separation, and that was shortly after her return from Maryland, and then the conversation was about his paying for a pair of shoes which she says he ordered for the girl when she went to Maryland, and refused to pay for, but which he denies that he ordered. When they have met in the street they have not spoken to each other. He says she would turn her head away from him when they met. There has, indeed, been a cessation of cohabitation, but that it has been with her hearty acquiescence is evident from their relations to each other before it began and her conduct towards him since it has continued. When inquired of on the witness-stand as to whether she had made any overtures to her husband, she answered that she had not, and gave as her reason that it was as much his duty to seek her as it was hers to seek him. The testimony is, on many points, conflicting and positively contradictory, and some of the witnesses are not such as to inspire confidence. The testimony of the petitioner herself is by no means free from criticism. She evidently testifies under a strong bias. Enough appears from the

testimony as a whole, however, to warrant the conclusion that the separation complained of was, to say the least of it, not against her will, and that she, at least, cheerfully acquiesced in it.

Where, from mutual dislike, incompatibility of temper, uncongeniality or other cause, husband and wife voluntarily separate, such separation, however long continued, will not of itself constitute desertion on either side, within the meaning of the statute. It will become a desertion, however, from the time when a renewal of marital cohabitation is sincerely sought, or, in other words, from the period when the mutual acquiescence in the separation is put at an end by the overtures of the complaining party. Had the petitioner, at any time during the separation, communicated to her husband her wish that he would, or willingness that he should, live with her as her husband, and he had refused, from that time he would have been chargeable with desertion. But there is no evidence on which any reliance can be placed, of any such desire or willingness on her part. She says that when she returned from Maryland she sent the children to his father's house, to inform him that " they had got home." One of the children—the girl—was then about five years old, and the other—the boy—only between two and three. The girl testifies, indeed (when she was sworn she was between eleven and twelve years old), that she told him that " they had got home, and asked him if he was not going to live with them again," and that he replied, " No; but it is all right." The petitioner, however, does not say that she told her to ask the question; and if the relations between her and her husband were not unpleasant when she went away (and she went, she says, to Maryland with his consent, and merely on a visit), it does not appear why she should have asked such a question, involving, as it did, the suggestion that he had abandoned her—which, according to her testimony, she had no reason whatever to suspect. It does not appear that he had separated himself from her at all then, except in accordance with her desire and for her accommodation, to enable her to visit her sister. On the other hand, the defendant swears that he did not receive any message whatever from her by the children, but that he first saw them in the street, and

Hankinson v. Hankinson.

they avoided him, and he was compelled to employ the kind offices of a friend to induce them to come to him. Again, as before stated, the daughter, at the time of the alleged message, was but five years old. For that reason, if for no other, her testimony on the subject cannot outweigh the sworn denial of the defendant. The petitioner has never, according to her own testimony, sent a kind or conciliatory message to her husband, but has treated him with unconcern, if not with evidences of positive dislike. Her attitude has been that of acquiescence, at least, in a separation which she appears to have done much to bring about, and which does not appear to have been at any time against her will. She has never complained that he did not live with her. She would, apparently, have been entirely satisfied if he had supported her and the children, even though he lived separate from her. She does not appear to have desired his society, but the contrary. Both parties are in the wrong. It is not profitable to inquire on which side the preponderance is. For the sake of their children, they ought not to have been satisfied to live separate from each other, but should have endeavored to effect a reconciliation. They have not done so. The separation which has existed is not, on either side, desertion, within the meaning of the statute. It has been frequently held that the separation which constitutes desertion must have been against the will of the complainant. *Moores* v. *Moores, 1 C. E. Gr. 275; Bowlby* v. *Bowlby, 10 C. E. Gr. 406; S. C. on appeal, Id. 570; Belton* v. *Belton, 11 C. E. Gr. 449; Taylor* v. *Taylor, 1 Stew. Eq. 207.*

The petition will be dismissed.